## Abijah Lockwood *vs.* Asa Perry.

A., by a writ of replevin against B., obtained possession of B.'s property, and sold it to C. : A.'s replevin suit was abated by his death, and no judgment was rendered therein : B. afterwards demanded the property of C., and, on C.'s refusal to give it up, replevied it. *Held,* that C. acquired no title to the property, by purchasing it of A., and *that B. might well maintain an action of replevin against him.

Replevin of two colts. The parties submitted the case to the court on the following facts agreed : On and before the 20th of April 1839, the plaintiff owned the colts replevied, and on that day H. C. Barnes sued out a writ of replevin against the plaintiff, in the county of Columbia, in the State of New York, returnable into the court of common pleas for that county; and by virtue of that writ the said colts were replevied, and delivered to said Barnes, who claimed them as his property, under an alleged contract between him and the present plaintiff, which was void by the laws of New York, where said alleged contract was made and was to be executed. The plaintiff and said Barnes then resided in said county of Columbia. The said action of replevin was tried at Hudson, in said county, in the court of common pleas there held in February 1841. The defendant in that action (the present plaintiff) made defence, on the ground that the aforesaid contract was void, and also on the ground that there had been no

breach of it.    A verdict was found for the plaintiff in that action, and judgment was rendered for him.    The present plaintiff sued out a writ of error on said judgment, returnable into the supreme court of the State of New York, and that court reversed said judgment in July 1842.    A new trial of said action was ordered to be had in the circuit court of said State, at its September term 1842, held at Hudson, at which term said Barnes procured a continuance of the action to February term 1843, and soon after, and before the next term of said court, died insolvent and intestate, and no administration has been taken on his estate.    No further proceedings were had in said suit, and the same was abated or stopped, in consequence of the death of said Barnes, and was terminated before the commencement of this action.

Whilst said replevin suit was pending, Barnes sold said colts to the defendant, who kept possession of them until they were replevied by the plaintiff.    Before the present suit was commenced, viz. in March 1843, and after the adjournment of the circuit court held at Hudson in February 1843, the plaintiff made a demand on the defendant to deliver said colts to him, and he refused.    The colts never were the property of said Barnes, and he had no right to the possession of them, unless he acquired a property in them, or a right of possession, by virtue of his proceedings in his aforesaid action of replevin.

*Emerson*, for the defendant.    1. Barnes, by his proceedings in replevin, acquired a right to the possession of the colts. This right continued in him, or in his representatives, until his suit was terminated, and was not impaired by the reversal of the judgment in his favor.    The plaintiff, therefore, could not maintain replevin against Barnes, if he were alive, nor can he now maintain such action against Barnes's representative or vendee, who stands in his place and is entitled to his rights.    By the Rev. Sts. *c.* 113, § 27, and numerous decisions, a party cannot maintain a writ of replevin, unless he has the immediate and exclusive right of possession.    *Wheeler* v. *Train*, 3 Pick. 255.    *Collins* v. *Evans*, 15 Pick. 63.    *Rogers* v *Arnold* 12 Wend. 30.    2 Saund. Pl. & Ev. 760.    The

law gave Barnes the possession and the apparent title. The right of possession resulted from his proceedings in his action; and, as a consideration for that right, he gave bond, with sureties, to indemnify the present plaintiff. Otherwise, he could not have obtained possession. *Smith* v. *M'Fall*, and *Wilson* v. *Williams*, 18 Wend. 521, 581.

A defendant in replevin, in order to acquire possession or the right of possession of the replevied property, must obtain a judgment *de retorno habendo*, and cause an eloinment to be returned, if true. He must have an adjudication on his right. *Perreau* v. *Bevan*, 5 Barn. & Cres. 284. *Hefford* v. *Alger*, 1 Taunt. 218. See also *Quincy* v. *Hall*, 1 Pick. 360. *Ilsley* v. *Stubbs*, 5 Mass. 284. *Gardner* v. *Campbell*, 15 Johns. 401. *Morris* v. *DeWitt*, 5 Wend. 71.

2. There has been great laches on the part of the plaintiff. By the common law, and by the statutes of New York, he had an adequate remedy. He might have had a return of the property on a judgment as on a nonsuit; or he might have proceeded, by writ of inquiry, for damages; or he might have brought a suit on the replevin bond. *Cooper* v. *Sherbrooke*, 2 Wils. 116. *Gould* v. *Warner*, 3 Wend. 54. 1 Esp. Dig. (Gould's ed.) Part 2, p. 376. (256.) *Whitwell* v. *Wells*, 24 Pick. 32. Rev. Sts. of New York, Part 3, *c*. 8, tit. 12. *Chapman* v. *Butcher*, Carth. 248. *Badlam* v. *Tucker*, 1 Pick. 286. The action, on the death of Barnes, survived to his representative, and an administrator would have been appointed on application of the present plaintiff. *Mellen* v. *Baldwin*, 4 Mass. 480. 2 Kent Com. (3d ed.) 411.

3. Barnes had a right to sell the property and give an indefeasible title to the purchaser. He was eventually answerable to the plaintiff for its value on the replevin bond. All the English and American statutes, which provide for a defendant in replevin, imply the right of the plaintiff to sell or dispose of the replevied goods. He has the possession; and it is contrary to the policy of the law, that a right of possession should not be accompanied with a right to sell. The property may be perishable, or liable to depreciate, so that a

specific return would be impossible ; or the expense of keeping it may be great.

Replevin was originally brought to try the lawfulness of a distress for rent ; and " as the end of all distresses is only to compel the party distreined upon to satisfy the debt or duty owing from him, this end is as well answered by sufficient sureties, as by retaining the very distress." 3 Bl. Com. 148. The distrainor acquired no lien on the property ; for the tenant used it as his own after the replevin, and might sell it. Bac. Ab. Replevin, A. *Acker* v. *White*, 25 Wend. 614. And one purpose of the modern replevin bond is to provide for the contingency of a sale by the obligor. The objection, made in *Baker* v. *Fales*, 16 Mass. 147, to extending the action of replevin to a case of detention, where there has been no unlawful taking, was put upon the ground that thereby any person might make a compulsory purchase of another's property. And the court, in answer to the objection, said nothing about the defendant's following the property, but said, " all that can be done is to punish such abuse, when it occurs, as is done in other like cases." In *Gordon* v. *Jenney*, 16 Mass. 469, it is said by Parker, C. J. that the plaintiff in replevin may deal with the goods as his own, and may sell them. See also *Taylor* v. *Dundass*, 1 Wash. 92. *Clark* v. *Adair*, 3 Harring. 113. 1 Saund. 195, *note* (3.) 2 Saund. 286, *note* (5.)

*Byington*, for the plaintiff. When Barnes replevied the colts and sold them, he had no property in them, and could convey none to the defendant. If Barnes had prevailed in his replevin suit, the defendant might have defended against this action, under the judgment in the replevin suit. But as that suit was abated by Barnes's death, the defendant has no better defence now than he would have had if that suit had never been commenced.

In the cases cited for the defendant, to show that a second action of replevin will not lie, the first action was pending. Those cases, therefore, do not affect the present.

The plaintiff had no remedy on the replevin bond given to him in the first suit. The abatement of that suit by the

death of Barnes was not a breach of the bond. *Badlam* **v.** *Tucker,* 1 Pick. 284. It is said the plaintiff might have had judgment, as upon a nonsuit. But a nonsuit presupposes that the plaintiff in the suit is alive. Besides; what judgment could be rendered against a dead man ? The revised statutes of New York give no remedy on a replevin bond, until there has been a judgment for a return. *Cowden* v. *Pease,* 10 Wend. 333. *Cowdin* v. *Stanton,* 12 Wend. 120. And by those statutes, part 3, *c.* 7, tit. 1, an action of tort cannot be pursued, after the plaintiff's death, unless there has been an interlocutory judgment. So that the present plaintiff could have no remedy in the replevin suit brought against him in that State.

The dictum cited from 16 Mass. 469, was extrajudicial and unwarranted. Besides ; the question there was between two attaching officers.

Dewey, J. The position taken by the defendant, that the object and purpose of the writ of replevin are to transfer the possession of the article replevied to the plaintiff in replevin, is certainly well maintained, if by possession be understood a possession for the time being. The further position, that the plaintiff in replevin, after the service of the writ, has a right to sell the property thus replevied, and may give to the purchaser a good, indefeasible title, which will not be affected by a judgment in favor of the defendant in replevin, is one more difficult to be sustained. If it were limited to replevin in cases of wrongful distress of personal chattels for rent, or of cattle damage feasant, it might be more readily assented to ; as in such cases the property is held by the defendant in replevin for a particular purpose, and he does not claim to be the owner of it. And where the plaintiff in replevin, who in such case is the actual owner, has given the requisite security, by a bond, to pay such rent, or such damages, if the property is not returned, it may be all that is requisite to do perfect justice between such parties. Whether a like principle should be applied to the case of replevin, in its extensive use now sanctioned by the laws of Massachusetts, requires more consideration.

The proposition is, that any one who will avail himself of the forms of law in instituting his action of replevin, merely alleging property in himself, and giving bonds, may, upon the service of the writ of replevin, sell the property replevied, absolutely and by an indefeasible title, and thus divest the real owner of his property, irrespective of the judgment in the action of replevin. The language of this court, in *Gordon* v. *Jenney,* 16 Mass. 469, is strongly relied upon as sustaining such a doctrine. Taken literally, and without any restriction to its application to the facts before the court, it would sustain that view of the question. But, as it seems to us, it is to be qualified by reference to the circumstances of that case. The plaintiff in replevin was there insisting upon his right to recover damages, by reason of a deterioration of the value of the goods pending the action of replevin. In answer to this claim, the court say, he is entitled to no damages on this account: "He may sell them. They are delivered to him upon the assertion that they are his property, and he has it in his power to deal with them as such." But the case before the court was that of a plaintiff in replevin who was the real owner of the property replevied. That had been already settled. Such a plaintiff in replevin may, of course, deal with the goods replevied as his own. He has the possession and the right of property, and therefore all the facilities, and all the legal rights too, requisite to make a legal transfer. In ordinary cases, the purchaser buys subject to the question of the vendor's title; and we think none the less so because the vendor has acquired his possession under a writ of replevin issued upon his own representation, and which may be wholly unfounded in truth. We perceive no sufficient reason for sanctioning the broad doctrine, that by reason of the mere fact that he has acquired his possession through the instrumentality of a writ of replevin, his vendee has acquired thereby an indefeasible title as against every body. It is doubtless true that the plaintiff in replevin has, by virtue of his writ, acquired the right of possession pending the action of replevin, and that the real owner cannot lawfully disturb that right

during the pendency of the action, nor institute an action against a third person who may become possessed of the goods. And this is precisely the extent of the right exercised by force of a writ of replevin. This view of the question is fatal to the defence, as presented upon the general position, that by virtue of the writ of replevin and giving of bonds to prosecute the same, the property absolutely vested in the plaintiff in replevin.

The defendant, however, further insists, that before the defendant in replevin can, in any case, be entitled to a return, or be authorized to regain the possession, by any legal process, he must have a judgment for a return; the judgment *de retorno* must actually be entered. That principle, so far as it applies to the institution of an action on the replevin bond, looking to that as the remedy, seems to be well sustained. *Cowdin* v. *Stanton*, 12 Wend. 120. But the further inquiry is, whether a discontinuance of the suit may operate to defeat a right of possession of a chattel acquired under a writ of replevin, and having no other foundation besides that which results from such writ. Such, we think, may be the effect; and if the defendant in replevin is content to resort to the property itself, and to forego his remedy upon the bond, he may, upon the discontinuance of the suit by the plaintiff in replevin, avail himself of his antecedent title, as the lawful owner, to regain the possession, although he may not have a formal judgment for a return of the property.

The next question is, whether there was any such termination of the action of replevin brought by Barnes against the present plaintiff. The case stated by the parties finds that the action was abated by the death of Barnes, and the case terminated before the institution of the present action of replevin. Such being the fact, the right of possession acquired temporarily by Barnes ceased, and the real owner was no longer prevented from regaining possession of his property, which had been unjustly taken from him, through the instrumentality of a process in replevin, by one having no claim thereto.　　　　　　　　*Judgment for the plaintiff.*